UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  AUG 24 2017  ★

LONG ISLAND OFFICE

-------------------------------------------------------X
TARA WOLIN and ROBERT GREENWALD,
individually and on behalf of all others
similarly situated,

                              Plaintiffs,

     -against-

MIDLAND CREDIT MANAGEMENT, INC.,
and MIDLAND FUNDING, LLC,

                             Defendants.
-------------------------------------------------------X

MEMORANDUM & ORDER

CV 15-6996
(Wexler, J.)

APPEARANCES:

> THE MUHLSTOCK LAW FIRM, PC
> BY: Todd D. Muhlstock, Esq.
> 100 Garden City Plaza, Suite 500
> Garden City, New York 11530
> Attorney for Plaintiffs
>
> MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, P.C..
> BY: Joseph A. Hess, Esq.
> 88 Pine Street, 21st Floor
> New York, New York 10005
> Attorney for Defendants

WEXLER, District Judge:

      Plaintiffs Tara Wolin ("Wolin") and Robert Greenwald ("Greenwald") (collectively

"plaintiffs") commenced this action against defendants Midland Credit Management, Inc.

("MCM") and Midland Funding LLC ("Midland Funding") (collectively, "defendants") alleging

violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

Presently before the Court is defendants' motion to compel arbitration pursuant to the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and agreements between the parties. *See* Motion,

Docket Entry ("DE") [20]. Plaintiffs have opposed the motion. For the reasons set forth herein, the motion to compel arbitration is granted in part and denied in part.

## I. BACKGROUND

Tolin and Greenwald are apparently unrelated individuals who each allegedly incurred a separate debt. Wolin's account was with Synchrony Bank/PC Richard and Greenwald's debt originated with Synchrony Bank/JCPenney. Both accounts were sold to defendant Midland Funding and the collection letters were sent by defendant MCM, a debt collection company purportedly collecting on and servicing the accounts on behalf of Midland Funding. The particulars of the accounts prior to their purchase by defendants are germane to the current motion and are provided in affidavits and supporting documents from (1) Jodi Anderson, a Lead Litigation Analyst with non-party Synchrony Bank ("Synchrony"), formerly known as GE Capital Retail Bank, regarding the origination of the accounts, and (2) Michael Burger, Director of Legal Collections Operations at defendant MCM regarding the acquisition of the accounts by defendants.

## A.    Wolin Account

On or about February 28, 2003, a PC Richard account was applied for in the name of Tara Wolin and was approved that same day by Synchrony Bank ("Synchrony"). Affidavit of Jodi Anderson re: Wolin account ("Anderson Aff: Wolin"), ¶5, DE [25]. The application has not been provided. Anderson avers that a PC Richard credit card was mailed to Wolin on or about February 28, 2003.

According to Synchrony's records, Wolin made her last payment on the account on November 20, 2014. The account was charged off by Synchrony on June 28, 2015, and subsequently sold to Midland Funding in July 2015.

Synchrony has provided a copy of the Credit Card Account Agreement that was purportedly in effect at the time of the charge off in June 2015. Anderson Aff.: Wolin, Ex. A. That agreement includes an arbitration provision that will apply if the recipient "does not reject it." The arbitration provision also contains language whereby the debtor agrees to not participate in a class action or bring suit on behalf of other account holders. The agreement does not show any indication on its face that it was sent to Wolin, and Anderson does not expressly claim that the agreement was sent to her. Although Synchrony claims that a "change of terms" was sent to Wolin in February 2015, the supporting document attached only contains a reference to a change in the late fee, does not contain an arbitration provision, and does not indicate that a complete agreement was provided to Wolin. Synchrony states that there is no record of Wolin rejecting the arbitration provision.

The Wolin account was assigned to defendant Midland Funding when it purchased her charged-off debt as part of a portfolio of such debts from Synchrony in July 2015. *See* Affidavit of Michael Burger re: Wolin account ("Burger Aff: Wolin"), ¶¶ 3, 6, DE [22]. Defendants provide documents evidencing the purchase. *Id.*

**B. Greenwald Account**

Synchrony acquired Greenwald's JC Penney credit card account as part of a portfolio in December 1999. That same month, Synchrony sent a notice to Greenwald enclosing the credit card agreement effective at that time. Affidavit of Jodi Anderson re: Greenwald account ("Anderson Aff: Greenwald"), ¶6, DE [24]. Change in term notices were sent to Greenwald in April 2008, July 2009, and June 2012. The agreement sent in December 1999 and the subsequent notices sent in 2008 and 2012 each contained arbitration provisions. The most recent agreement sent to Greenwald in June 2012 contains an arbitration provision stating that absent

3

rejection, certain claims are subject to arbitration and the debtor agrees not to participate in class actions or bring claims on behalf of others." Anderson Aff: Greenwald, Ex. B. Synchrony states that there is no record of Greenwald rejecting the arbitration provision.

Greenwald made his last payment on July 29, 2014. The account was charged off by Synchrony on March 11, 2015, and subsequently sold to Midland Funding LLC that same month. The Greenwald account, which had an outstanding balance of $7,081.73 at charge-off, was part of a portfolio of charge-off debts purchased from Synchrony by defendant Midland Funding. *See* Affidavit of Michael Burger re: Greenwald account ("Burger Aff: Greenwald"), ¶¶ 6, 11, Exs. 1-3, DE [23].

## C. The Complaint

After the sale of the accounts, MCM commenced collection efforts against plaintiffs. The facts, as set forth in the boilerplate, eight page complaint, are straightforward. Additional facts are drawn from the collection letters attached to the complaint and incorporated by reference therein.

Tolin and Greenwald each received a collection letter containing bolded language that **"Communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent"** to a specified address. Complaint, Ex. 1 (emphasis in originals). Plaintiffs allege that there is no requirement that a debt be disputed in writing and that it is a violation of the FDCPA to require a dispute in writing. Thus, plaintiffs' allege, the language regarding communications in writing, when viewed from the perspective of the least sophisticated consumer, "overshadows" or contradicts the FDCPA, constituting violations of that statute.

Defendants claim that the credit card agreements in effect for the accounts held by both plaintiffs contain an arbitration provision. They now move to compel arbitration pursuant to those provisions.

## II. DISCUSSION

### A. Admissibility of Evidence

As a threshold matter, plaintiffs attack the admissibility of the evidence submitted by defendants in support of their motion. Specifically, plaintiffs suggest that the affidavits attaching certain documents do not satisfy Rule 803 (6) (A), (C), & (D) of the Federal Rules of Evidence. The Court disagrees.

Jodi Anderson, non-party Synchronity's employee, submitted two affidavits in which she asserted that she is a Lead Litigation Analyst with Synchrony and has job responsibilities including reviewing and analyzing account records and transaction histories for credit card accounts held by Synchrony. She further asserts that the documents attached to her affidavits "were kept in the course of the regularly conducted business activity of Synchrony" and were made "as a regular practice during its regularly conducted business activity." Michael Burger's affidavits contain similar statements. The Court finds that these averments satisfy the requirements of Rule 803 (6). In addition, plaintiffs have failed to carry their burden of demonstrating that the documents indicate a lack of trustworthiness. *See* FED. R. EVID. 803 (6)(E). For purposes of this motion, the affidavits and attached documents comply with Rule 803 and will be considered.

Plaintiffs further claim that defendants do not have standing to compel arbitration under the agreements because defendants have not demonstrated that they are the actual assignees of the accounts at issue. The Court finds that the affidavits and attachments submitted in support of

the motion adequately establish the "chain of custody" of the accounts and defendants' rights to proceed.

## B. Applicability of Arbitration Provisions

Under the Federal Arbitration Act ("FAA"), "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA mirrors the "strong federal policy favoring arbitration as an alternative means of dispute resolution," *Ragone v. Atl. Video of Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (internal quotation and citation omitted), and serves to "ensure judicial enforcement of privately made agreements to arbitrate," *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219, 105 S. Ct. 1238 (1985). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218 (emphasis in original). The rigorous enforcement of arbitration agreements "holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013) (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. __, 132 S. Ct. 665, 669-69, 181 L.Ed.2d 586 (2012) (internal quotation and citation omitted)). Courts analyzing arbitration agreements in FDCPA cases have found those claims to be appropriate for arbitration. *See, e.g., Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 475 (S.D.N.Y. 2013); *Fedotov v. Peter T. Roach & Assocs., P.C.*, No. 03 CIV. 8823, 2006 WL 692002, at *3 (S.D.N.Y. Mar. 16, 2006) (citing cases).

Courts deciding motions to compel arbitration apply a "standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir.

2003). The court considers all relevant admissible evidence and draws all reasonable inferences in favor of the non-moving party. *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 229 (2d Cir. 2016) (citations omitted). Typically, the court is called upon to decide whether the parties agreed to arbitrate and whether the claims at issue fall within the scope of the parties' agreement. *See Holick v. Cellular Sales of N.Y., LLC,* 802 F.3d 391, 394 (2d Cir. 2015).

### 1. Wolin Account

Defendants' arguments regarding arbitrability of Wolin's claims fail because they do not provide evidence that Wolin was ever on notice of, much less assented to, the arbitration provisions. The Anderson affidavit attaches a credit card agreement containing an arbitration provision that purportedly "governed the Account at the time of the charge-off on June 28, 2015." Absent from the affidavit, however, is any statement or demonstration that that agreement was ever actually *sent* to Wolin. Although Anderson states that a change of terms was sent to Wolin in February 2015, there is no mention within that document of any arbitration requirements. On this record, the Court cannot conclude that Wolin agreed to arbitrate any dispute. Accordingly, the motion to compel arbitration of Wolin's claims is denied.

### 2. Greenwald Account

Defendants' submissions establish that Greenwald was sent written copies of agreements containing the arbitration provision on several occasions. The agreements contained instructions for opting out of that provision, but Greenwald did not do so. In addition, the 2012 credit card agreement specified that as to New York residents, the agreement would not be effective "unless or until you or an authorized user signs a sales slip or memorandum evidencing a purchase." Burger Aff: Greenwald, Ex. B. As Greenwald subsequently used the card as late as January 6, 2015, he assented to the terms of the agreement. Based on this record, the Court finds that

7

Greenwald agreed to the arbitration provision. Having found that the parties agreed to arbitrate, the Court turns to the question of whether the claims in this case fall within the scope of the arbitration clause.

The arbitration provision contained in the agreement states that arbitration is required for "any dispute or claim between you or any other user of your account, and us, our affiliates, and/or J.C. Penney Corporation, Inc. if it relates to your account." Where the arbitration clause is broad, as in this case, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it. " *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (internal quotation marks and citation omitted). Plaintiff has not put forth any argument warranting a conclusion that the presumption of arbitrability has been overcome. As Greenwald's claim clearly arises out of defendants' efforts to recover amounts owed as a result of charges made by him on the credit card, that claim is covered by the arbitration provision. Defendants' motion to compel arbitration of Greenwald's claim is granted.

## III. DISMISSAL OF CLAIMS OR STAY

Defendants seek dismissal of the arbitrable claims rather than a stay. Plaintiffs have not addressed this issue. The Court finds dismissal appropriate for the following reasons.

Plaintiffs Wolin and Greenwald jointly commenced this action against defendants alleging violations of the FDCPA. Although the same defendant sent the letters at issue, the plaintiffs are unrelated and the letters seek to collect different debts from different transactions arising under different underlying agreements. Multiple persons may join in a single action as plaintiffs if "(A) they assert any right to relief jointly, severally, or in the alternative with respect

8

to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." FED. R. CIV.P. 20(a)(1). Both elements are required for a proper joinder of plaintiffs. *See* Moore's Federal Practice § 21.02[1] (3d ed. 2009) ("Failure to satisfy either prerequisite for permissive joinder constitutes misjoinder of parties."). The Court may *sua sponte* sever a party or claim. *See* FED. R. CIV.P. 21; *Prospect Capital Corp. v. Bender*, No. 09 CIV. 826, 2009 WL 4907121, at *7, n.9 (S.D.N.Y. Dec. 21, 2009).

As discussed above, there are disparate issues of fact pertaining to the two plaintiffs that may warrant severance. As the Court questions whether these plaintiffs were properly joined in the first instance, it concludes that dismissal of Greenwald's claims is appropriate.

## IV. CONCLUSION

Defendants' motion to compel arbitration, DE [20], is granted in part and denied in part. The motion to compel arbitration of Greenwald's claims is granted, and those claims are dismissed. The motion to compel arbitration of Wolin's claims is denied.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
      August 24, 2017